UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04771-MRA-JC | Date | April 17, 2026 |
|---|---|---|---|
| Title | *Shant Joukjian v. Dr. Pepper/Seven Up, Inc. et al.* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|
| Melissa H. Kunig | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER DENYING MOTION TO DISMISS [26]**

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Strike Class Allegations. ECF 26. The Court read and considered the Motion and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. ECF 36. For the reasons stated herein, the Court **DENIES** the Motion.

## I. BACKGROUND[1]

Plaintiff Shant Joukjian ("Plaintiff" or "Joukjian") brings this action for false advertising and deceptive marketing against Defendants Dr. Pepper/Seven Up, Inc. and Keurig Dr. Pepper Inc. (collectively, "Defendants" or "Dr. Pepper") on behalf of himself and others similarly situated. ECF 17 ("FAC") ¶ 1. Plaintiff is an individual and a citizen of Los Angeles, California. *Id.* ¶ 19. Defendants are both Delaware corporations with their principal place of business in Frisco, Texas.[2] *Id.* ¶¶ 20, 21. Plaintiff alleges that Defendants' beverages, which Defendants advertise as being made with "100% Natural Flavors" and "All-Natural Flavors," in fact "contain significant amounts of synthetic ingredients . . . rendering the labeling false, deceptive, misleading, and fraudulent." *Id.* ¶¶ 2, 5.

On March 16, 2025, Plaintiff searched online for beverages made with natural flavors and,

[1] The factual background is described as alleged in Plaintiff's Complaint. When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is required to presume that all well-pleaded allegations are true, resolve all reasonable doubts and inferences in the pleader's favor, and view the pleading in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (per curiam); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

[2] Dr. Pepper/Seven Up, Inc. is a wholly owned subsidiary of Keurig Dr. Pepper, and Plaintiff alleges that Defendants "operate as a single, unified business enterprise." *Id.* ¶ 26.

relying on the images of the packaging and the description of the product, purchased a 24-can pack of Defendants' 7-Up soda from Amazon for his personal use.[3] *Id.* ¶¶ 87–89. Despite Defendants' statements appearing on the online store description that the soda contained "100% Natural Flavors" and "All-Natural Flavors," and was "stripped of artificial colors and preservatives," Plaintiff subsequently learned that the soda "contains ingredients such as [a form of citric acid known as] MCA, potassium citrate, and calcium disodium EDTA—each of which functions both as a component of the Product's flavor and as a preservative." *Id.* ¶ 90. Plaintiff relied on Defendants' representations that the soda contained only natural flavors, and that he would not have purchased the soda or would have paid less for the soda had he known it included synthetic flavoring ingredients. *Id.* ¶¶ 98, 99, 103. Plaintiff would like to purchase 7-Up again in the future, but he cannot do so lest he will be similarly injured again. *Id.* ¶ 108.

Based on the foregoing allegations, Plaintiff initiated this action on May 27, 2025. ECF 1. On August 14, 2025, Plaintiff filed his FAC, bringing the following claims on behalf of himself and a putative nationwide class of consumers (which also includes a sub-class of California consumers): (1) violations of California's Consumer Legal Remedies Act ("CLRA"); (2) violations of California's Unfair Competition Law ("UCL"); (3) violations of California's False Advertising Law ("FAL"); (4) breach of express warranty; (5) unjust enrichment; (6) negligent misrepresentation; and (7) intentional misrepresentation. ECF 17. On September 5, 2025, Defendants moved to dismiss the FAC in its entirety (the "Motion"). ECF 26. Plaintiff filed an Opposition, and Defendants filed a Reply. ECF 29, 25.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. "On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In other words, a complaint must "state a claim to relief that is plausible

---

[3] Plaintiff purchased the original lemon-lime flavored 7-Up soda but claims that Defendants' other similar 7-Up beverages, including 7-Up Lemon-Lime, 7-Up Lemon-Lime Zero Sugar, and 7-Up Cherry, also contain the same misleading advertising. *See id.* ¶ 15 n.3. Unless otherwise specified, the Court uses the terms "7-Up" or "soda" to refer to all the 7-Up class of products in their various flavors.

on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those prior to trial[.]" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* 510 U.S. 517 (1994)). In ruling on a motion to strike, the court "takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) (citation omitted).

"Generally, although it is not *per se* improper for a defendant to move to strike class allegations before the motion for class certification, most courts decline to grant such motions because the shape and form of a class action evolves only through the process of discovery." *Fernandez v. CoreLogic Credco, LLC*, 593 F. Supp. 3d 974, 995 (S.D. Cal. 2022) (citation and alterations omitted); *see also Ott v. Mortg. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1062 (D. Or. 2014) ("[M]otions to strike class allegations are generally disfavored because 'a motion for class certification is a more appropriate vehicle' for testing the validity of class claims.") (quoting *Thorpe v. Abbott Lab., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008)); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted."). "Courts that have stricken class allegations at the pleading stage have recognized that the 'granting of motions to strike class allegations before discovery and in advance of a motion for class certification is rare' and have only done so in rare occasions where the class definition is obviously defective in some way." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d. 1190, 1221 (N.D. Cal. 2014) (quoting *Lyons v. Bank of Am., NA*, No. 11–1232, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011)). In other words, "a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained." *Fernandez*, 593 F. Supp. 3d at 995.

## III. DISCUSSION

Defendants move to dismiss and strike portions of the FAC on two grounds. First, Defendants argue that the federal Food, Drug, and Cosmetic Act ("FDCA") preempts Plaintiff's

claims because the allegedly misleading statements Plaintiff relied upon when purchasing Defendants' product are in fact true. ECF 26 at 10–18. Second, Defendants argue that, even if the Court finds that Plaintiff has adequately pleaded his claims, it should strike the allegations pertaining to a nationwide class because Plaintiff does not have standing to bring those claims. *Id.* at 18–20.

### A. Preemption

Plaintiff brings state law claims under the UCL, FAL and CLRA for manufacturing and producing 7-Up with allegedly misleading and deceptive packaging. The UCL prohibits "unfair competition," which includes any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200; *see also Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (explaining that the statute is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of § 17500 ("FAL")). Each "prong" of the UCL provides a separate and distinct theory of liability. *Id.* Plaintiff asserts claims under all three prongs of the UCL. ECF 17 ¶¶ 155–90. Under the unlawful prong, Plaintiff claims Defendant's conduct violated certain provisions of the FDCA, specifically 21 U.S.C. § 343, the corresponding provisions of the Sherman Act, and the FAL. ECF 17 ¶ 157.

The FAL prohibits the dissemination of any advertisement concerning real or personal property, "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. The same standard applies to conduct alleged to be deceptive or misleading under the CLRA. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Therefore, when determining whether a complaint should be dismissed at the pleading stage, claims for violation of the FAL, CLRA, and the UCL are analyzed simultaneously. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (citing *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014)).

Defendants argue Plaintiff's claims are preempted because the statements at issue—"all-natural flavors" or "100% natural flavors"—comply with the FDCA and its implementing regulations. ECF 26 at 11 ("FDA regulations thus supply the definitive answer to the question whether an ingredient in a beverage is an 'artificial flavor.'"). Defendants argue that under FDA regulations, the mass-produced citric acid ("MCA") allegedly contained in Defendants' products is "natural," not "artificial," and Plaintiff's state law claims fail because Defendant complies with the FDA regulations.

To promote "[n]ational uniform nutrition labeling," the FDCA preempts state laws that

"directly or indirectly establish . . . any requirement for nutrition labeling of food that is not identical" to the FDCA's nutrition labeling requirements. 21 U.S.C. § 343-1(a)(4). Thus, "private plaintiffs may bring only actions to enforce violations of '*state laws* imposing requirements identical to those contained in the FDCA.'" *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 808 (9th Cir. 2020) (quoting *Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008)). Consequently, if a product's label complies with the FDCA, then the FDCA preempts any state-law claim that the product is mislabeled. *See Hollins v. Walmart Inc.*, 67 F.4th 1011, 1016 (9th Cir. 2023). By the same token, if a plaintiff alleges that a product is mislabeled in a way that also violates the FDCA, such claims are not preempted.

The issue before the Court is whether Plaintiff has plausibly alleged that 7-up contains ingredients that are "artificial flavors," as that term is defined by FDA regulations. The FDA regulations state in relevant part:

> (1) The term artificial flavor or artificial flavoring means any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.
>
> (3) The term natural flavor or natural flavoring means the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.

21 C.F.R. § 101.22(a)(1), (a)(3).

Defendants argue that under these definitions, MCA is "natural," not "artificial." Defendant points to allegations in the FAC to argue that, as alleged, MCA is derived from sugar, which is a plant, and is therefore a "natural" flavor under FDA regulations. ECF 26 at 12 (citing FAC ¶¶ 63–65). Defendants argue that "[t]he FDCA would preempt any attempt to argue that California law differs from federal law on how to classify the ingredients in the 7-Up." *Id.* at 17.

In response, Plaintiff argues that its allegations "support the conclusion that the MCA used in Defendants' beverages is an artificial flavor because it does not come from any of the natural sources enumerated in 12 C.F.R. § 101.22(a)(3) . . . but is instead industrially synthesized through

a biotechnological fermentation process." ECF 29 at 11. Plaintiff points to allegations that different base components—none of which contain citric acid on their own—are metabolized by genetically mutated strains of *aspergillus niger* to create a new compound that is then further chemically refined into MCA. *Id.*

The Court finds that, at this early stage of the litigation, Plaintiff has sufficiently alleged that MCA is not a natural flavor under the federal and corresponding state food and drug regulations. Defendants urge the Court to accept the following logical theorem: (1) according to the FDA, a flavor derived from a plant material is a natural flavor; (2) "[s]ugar is a plant material"; and (3) MCA is allegedly derived from sugar, which means MCA is a natural flavor. ECF 35 at 7. But this simplistic formulation requires the Court to ignore contrary allegations in the FAC and draw reasonable inferences in Defendants' favor, which the Court may not do at this stage.

Both parties heavily dispute, for example, the meaning of the word "derive" as it is used in the regulations. Plaintiff argues that MCA is not "derived" from sugar, because "no citric acid is ever extracted from plants or [an]other natural source . . . . [r]ather, carbon atoms from a sucrose- or glucose-containing medium—neither of which contain citric acid in any form—are metabolized by genetically mutated strains of *Aspergillus niger* (which also contains no citric acid) to create a new compound that is then further chemically refined into MCA." ECF 29 at 11 (citing FAC ¶¶ 60–65). Defendants counter that Plaintiff misunderstands the word "derive" as it is applied in chemistry, arguing that "when a flavoring constituent derived from plant material is combined with another constituent component to create an ingredient, the ingredient is derived from the underlying plant material." ECF 35 at 10. But even under Defendants' definition of "derive," Plaintiffs plausibly allege that MCA is not derived from sugar because sugar is not a "parent substance" of MCA. FAC ¶ 64 ("Citric acid is not present in either the sugar medium or the *Aspergillus niger* itself prior to synthesis, and thus cannot be extracted, as can be done from natural sources such as citrus fruits."). Insofar as Defendants seek to claim a superior characterization of the chemical principles or processes involved, the Court finds such arguments irrelevant at the motion to dismiss stage.[4]

This conclusion is consistent with other district court rulings finding that plaintiffs had sufficiently alleged that MCA was artificial. *See, e.g.*, *Taylor v. Walmart, Inc.*, 789 F. Supp. 3d

---

[4] Moreover, Defendants' proposition depends on the Court taking judicial notice of the fact that sugar is a plant. The Court finds it inappropriate to do so, because the FAC refers merely to "sugar" or a "sucrose- or glucose-containing medium." FAC ¶¶ 63–64. Thus, the face of the FAC does not reveal whether the sugar used in the synthesis of MCA is, in fact, "sugar cane" or "sugar beets" in its natural state.

774, 785 (C.D. Cal. 2025); *Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1238 (C.D. Cal. 2025). Defendants argue that these decisions did not consider the argument Defendants make now—that MCA meets the regulatory definition of a natural flavor because it is derived from plant material. But that distinction is beside the point because, for the reasons explained above, Plaintiffs have sufficiently alleged that citric acid is not derived from plant material.

Because Plaintiffs have plausibly alleged that MCA is not a "natural flavor" within the meaning of the FDA regulations, the Court concludes that the FDCA does not preempt Plaintiff's state law claims based on representations made by Defendants that the products contain "100% Natural Flavors" and "All-Natural Flavors."[5]

### B. Standing on Behalf of Nationwide Class

Defendants also move to strike class allegations in the FAC. Courts in the Ninth Circuit have disagreed as to whether class action plaintiffs can bring claims for products they did not personally purchase but were purchased by unnamed class members. Some district courts have dismissed such claims based on standing. *See, e.g., Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 WL 5458396, at *4–5 (N.D. Cal. June 14, 2012) ("The Court finds plaintiffs do not have standing to bring this claim because they did not purchase the Crescent Rolls and therefore, as a matter of law, could not have suffered a particularized injury as required by Article III."). But "the prevailing view in the Ninth Circuit" is "that a plaintiff may, under certain circumstances, have constitutional and statutory standing to assert claims based on misrepresentations appearing on products he did not purchase." *In re 5-Hour ENERGY Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG (PLAx), 2014 WL 5311272, at *7 (C.D. Cal. Sept. 4, 2014).

Under the majority view, a plaintiff may proceed as to non-purchased products "so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012); *In re 5-Hour ENERGY*, 2014 WL 5311272, at *7 (C.D. Cal. Sept. 4, 2014); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, Nos. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) ("[T]he critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased."). Courts have often postponed the inquiry into whether the products and misrepresentations are

[5] Because Plaintiff has adequately alleged that MCA is not a natural flavor, and that Defendant's products stating "100% Natural Flavors" or "All-Natural Flavors" are therefore false and misleading, the Court does not consider whether the other ingredients identified in the FAC (*e.g.*, potassium nitrate, calcium disodium EDTA, and artificial sweeteners) are flavors within the meaning of the FDA regulations.

substantially similar until the class certification stage, where the court "will have to gauge the typicality of [the plaintiff's] claims and [the plaintiff's] ability to adequately represent the interests of the proposed class[ ]." *In re 5-Hour ENERGY*, 2014 WL 5311272, at *7. "In applying the 'substantial similarity test, [c]ourts look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1083 (N.D. Cal. 2014)

Here, the Court concludes that the substantial similarity test is satisfied for pleading purposes because the FAC alleges that the Class Products are all beverages and each of the Class Products incorporate MCA, "a synthetic compound that significantly increases the flavor profile of the Class Products." FAC ¶ 57. Because the products are of the same kind and they each bear the same alleged mislabeling (*i.e.*, "100% Natural Flavors" and "All Natural Flavors"), Plaintiff has adequately pleaded substantial similarity, and the Court will not strike Plaintiff's class allegations.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss the FAC and Motion to Strike Class Allegations [26] is **DENIED**.

**IT IS SO ORDERED.**

| | |
|---|---|
| | - : - |
| Initials of Deputy Clerk | mku |